IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

HASKELL D. JOHNSON,           )
                              )
           Petitioner,        )
                              )
    v.                        )     CV 114-204
                              )
GLENN JOHNSON, Warden,        )
                              )
           Respondent.        )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

Petitioner, an inmate at Ware State Prison in Waycross, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

On May 16, 2000, a Richmond County grand jury indicted Petitioner, Derek Willingham, and Franklin Frails for malice murder, felony murder, and possession of a firearm during the commission of a crime. (Doc. no. 20-3, pp. 6-10.) This case arose out of events that occurred on March 4, 2000, and hereinafter will be referred to as the "Murder Case." (Id.) This habeas petition challenges the validity of Petitioner's convictions on the malice murder and possession of a firearm counts. The Supreme Court of Georgia provided

the following description of facts based on evidence offered against Petitioner at trial:

> Around 4:00 a.m. on March 4, 2000, [Petitioner], Willingham, and Frails were at a house in Augusta, Georgia, where drugs were frequently sold. [Petitioner] and Willingham were armed with handguns. A witness saw a man give the victim $20 to purchase cocaine for him at the house. The victim and the man then met with [Petitioner] and Willingham to buy the drugs. During the transaction, [Petitioner] robbed the man and then shot the victim. The man drove off in his car, and law enforcement has never identified him. Another witness at the drug house saw Willingham and [Petitioner], who was carrying a gun, exit the back door of the house shortly before hearing five or six shots fired outside. Shortly thereafter, the victim was found lying behind the house, where he died from a gunshot wound to the chest. Five .45 caliber cartridge casings were found at the crime scene.
>
> About 3:00 or 4:00 a.m. the following day, March 5, 2000, a deputy sheriff approached [Petitioner], who was sitting in a pickup truck parked outside a bar in a high drug area in Augusta. [Petitioner] appeared to be trying to hide by slumping down in the driver's seat. When the deputy opened the door and asked [Petitioner] to step out, [Petitioner] dropped his jacket and ran away. He was caught nearby. The deputy found a .45 caliber handgun in or under the front driver's seat and a .380 caliber handgun under the front passenger seat. He also found crack cocaine in the jacket [Petitioner] had dropped.
>
> A firearms expert determined that a bullet recovered from the victim's body and the five .45 caliber casings found at the murder scene had all been fired from the .45 caliber handgun found with [Petitioner] in the truck. One of the witnesses from the drug house testified that the handle of the .45 caliber murder weapon looked like the handle of the gun he saw [Petitioner] carrying just before the shooting.
>
> In a post-arrest statement to law enforcement officers, [Petitioner] said that he knew "there was something on those guns and I'm going to go away for a long time" and that he knew the .45 caliber handgun was the gun that killed the victim. He asked if he was "ever going to see the streets again." [Petitioner] admitted that he, along with others he would not name, met with the victim and the unidentified man behind the drug house, and, although they initially were going to sell the man fake drugs, they decided to rob him instead. [Petitioner] claimed that someone he was with used the .45 caliber gun to rob the man and shoot the victim.

Johnson v. State, 733 S.E.2d 736, 738-39 (Ga. 2012).

Because of the drugs and guns found in the truck on March 5, 2000, the day after the murder, a Richmond County grand jury indicted Petitioner for possession of cocaine with intent to distribute, possession of a firearm during the commission of a crime, and carrying a concealed weapon. (See doc. no. 5-39, pp. 8-10.) This case, referred to hereinafter as the "Drug Case," went to trial before the Murder Case. (Id.) At the February 8, 2011 trial of the Drug Case, the jury found Petitioner guilty of possession of cocaine with intent to distribute and not guilty of possession of a firearm during the commission of a crime, and the trial court granted a directed verdict on the charge of carrying a concealed weapon. (See doc. no. 5-41, pp. 30-31.) Petitioner appealed the conviction on the possession of cocaine charge, and on September 6, 2006, the Georgia Court of Appeals reversed and remanded the conviction for a new trial because Petitioner received ineffective assistance of counsel related to a state witness's false testimony. (See doc. no. 5-42, pp. 6-14.) On motion by the state, the Drug Case was dead-docketed on November 15, 2006. (See id. at 3-4.)

George D. Bush represented Petitioner in the Murder Case that is the subject of this § 2254 petition. (Doc. no. 5-21, p. 24.) A Richmond County jury found Petitioner guilty on all counts on July 27, 2001. (Doc. no. 5-19, p. 8-9.) On August 24, 2001, Richmond County Superior Court Judge Carl C. Brown, Jr., sentenced Petitioner to life imprisonment for malice murder, life imprisonment for felony murder, and five years imprisonment for possession of a firearm during the commission of a crime. (Id. at 17.) That same day, Mr. Bush filed a motion for new trial. (Id. at 14-15.)

On July 12, 2007, after a long delay due to problems with the trial transcript, the Superior Court of Richmond County appointed Barbara Claridge to represent Petitioner on

his motion for new trial, after Petitioner informed Mr. Bush he would be raising an ineffective assistance of trial counsel claim. (Doc. no. 5-20, p. 56.) Petitioner claimed that a new trial was necessary because the trial court erred by (1) admitting similar transaction evidence of possession of a firearm on March 5, 2000, despite Petitioner's acquittal of this charge in the Drug Case, which created a collateral estoppel issue; (2) admitting into evidence testimony concerning possession of a firearm and possession of crack cocaine with intent to distribute because they were not similar transactions; (3) giving a jury charge regarding presumption of possession of a firearm, when Petitioner had been acquitted of this offense in the Drug Case, and not allowing evidence of the acquittal. (Doc. no. 5-21, pp. 16-19.) On April 22, 2009, the trial court held a hearing on Petitioner's motion for new trial and denied the motion on November 2, 2011. (See doc. no. 5-41, pp. 13-29; doc. no. 5-6, p. 31.)

Ms. Claridge, representing Petitioner on direct appeal to the Supreme Court of Georgia, asserted that the trial court committed harmful error:

(1) By admitting similar transaction evidence of possession of a firearm, despite Petitioner's acquittal of this charge in the Drug Case, which created a collateral estoppel issue;

(2) By admitting evidence of Petitioner's alleged involvement in a jailhouse fight; and

(3) By granting the State's requested jury charge regarding presumption of possession of a firearm.

(Doc. no. 5-43, pp. 25-26.) On October 29, 2012, the Supreme Court of Georgia rejected Petitioner's contentions, affirmed his convictions for malice murder and possession of a firearm during the commission of a crime, and reversed his life sentence for felony murder because it was vacated by operation of law since the jury found Petitioner guilty of malice

4

murder.  See Johnson, 733 S.E.2d at 741.

Petitioner filed a state habeas corpus petition *pro se* on July 31, 2013 in the Superior Court of Ware County, alleging that appellate counsel was ineffective for failing to raise in a motion for new trial or on appeal that trial counsel was ineffective for failing to present the record needed to support Petitioner's collateral estoppel claim.  (Doc. no. 5-1, pp. 1-16.)  The state habeas court conducted an evidentiary hearing on November 14, 2013, and appellate counsel testified.  (Doc. no. 5-6, pp. 1-21.)  At the evidentiary hearing, the state habeas court informed both Petitioner and the state they would have sixty days from the date they received the transcript of the proceeding to submit a post-hearing briefs and/or proposed orders.  (Id. at 19-21.)  Before the full sixty days had run, the state habeas court denied Petitioner relief in an order dated March 27, 2014.  (See doc. no. 5-4.)  The state habeas court vacated its March 27, 2014 Order after learning that Petitioner had not been allowed the full sixty days.  (See id.; doc. no. 5-3.)  Subsequently, the state habeas court denied relief in a final order filed on June 17, 2014.  (Doc. no. 5-2.)

Petitioner filed a certificate of probable cause to appeal with the Georgia Supreme Court, seeking review of the state habeas court's decision.  See SUPREME CT. GA., (Apr. 21, 2014), http://www.gasupreme.us/docket_search/results_one_record.php?caseNumber=S14H 1197.  The Georgia Supreme Court denied the certificate on September 8, 2014.  (Doc. no. 5-5.)

Petitioner timely filed the above-captioned § 2254 petition *pro se* on October 28, 2014, raising the following grounds for relief:

I.     The trial court committed harmful error by admitting similar

transaction evidence of:

  (a) Possession of a firearm, which a jury had acquitted Petitioner of in the Drug Case; and

  (b) His conviction for possession of cocaine in the Drug Case, a conviction which the Georgia Court of Appeals overturned for false testimony from a State witness.

II.    The trial court committed harmful error when it admitted evidence of his involvement in a jailhouse fight.

III.   The trial committed harmful error by granting the state's requested jury charge on presumption of possession of a firearm.

IV.   Appellate counsel was ineffective for failing to raise in a motion for new trial or on appeal that trial counsel was ineffective for failing to present the record needed to support Petitioner's collateral estoppel claim.

V.    The state habeas court violated his due process rights by signing a final order denying relief before expiration of Petitioner's deadline to file a response brief.

(See generally doc. no. 1.)

## II.  STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

  (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quoting Richter, 562 U.S. at 102; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (petitioner must show the state court's ruling "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. 290, 301 (2010) (explaining that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (internal citation and punctuation omitted). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.") (internal quotation marks omitted).

III.   **DISCUSSION**

   A.   **This Court Defers to the State Court's Decision Correctly Denying Petitioner's Collateral Estoppel Claim in Ground I(a).**

In subsection (a) of Ground I, Petitioner alleges the trial court erred by admitting similar transaction evidence of Petitioner's possession of the firearm found in the truck on March 5, 2000, of which Petitioner had been acquitted in the Drug Case.  (Doc. no. 1, p. 6.) The Georgia Supreme Court found that the trial court properly denied the collateral estoppel claim because trial counsel had not attempted to offer into evidence any record from the Drug Case to demonstrate that the fact at issue was necessarily resolved in Petitioner's favor. See Johnson, 733 S.E.2d at 741.  Indeed, at trial of the Murder Case, trial counsel proffered only a certified copy of the judgment in the Drug Case, which fails to show the details necessary to support Petitioner's collateral estoppel claim.  (See doc. no. 5-31, pp. 43-44; doc. no. 5-39, pp. 8-11.)   The trial judge did not admit the copy of the judgment into evidence, but did grant trial counsel's request to include it in the appellate record.  (Doc. no. 5-31, pp. 43-44.)  This judgment merely confirms the basic fact that Petitioner was acquitted of possessing a firearm during commission of a crime, namely possession of cocaine with intent to distribute.  (Doc. no. 5-39, pp. 8-11.)

In Ashe v. Swenson, 397 U.S. 436 (1970), the Supreme Court held that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  Id. at 443.

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

Id. at 444. However, "[t]he burden is on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Schiro v. Farley, 510 U.S. 222, 233 (1994) (citing Dowling v. United States, 493 U.S. 342, 350 (1990)).

A certified copy of the judgment entered in the Drug Case was insufficient to demonstrate that the fact at issue, *i.e.*, possession of the .45 caliber handgun found in the truck on March 5, 2000, was necessarily resolved in his favor. Johnson, 733 S.E.2d at 740-41; compare, e.g., Waggaman v. Franklin Life Ins. Co., 458 S.E.2d 826 (Ga. 1995) (affirming grant of summary judgment on res judicata grounds where appellee introduced sufficient certified portions of record from prior proceeding, as well as affidavit, to carry burden to establish the elements of res judicata); see also Boozer v. Higdon, 313 S.E.2d 100 (Ga. 1984) (holding that to prevail on a collateral estoppel claim, one must introduce sufficient parts of the prior record to "prove that the contested issues . . . were actually litigated and decided and were necessary to the prior decision"); Davis v. State, 471 S.E.2d 14, 16 (Ga. Ct. App. 1996) ("Absent evidence from the first trial showing that Davis was acquitted of being a party to the crime of possession of a firearm during the commission of a felony, OCGA § 16-11-106(b)(3), we simply cannot determine whether the acquittal on the firearms charge would necessarily preclude a guilty verdict on armed robbery.").

Here, in addressing Petitioner's claim in subsection (a) of Ground I, the Georgia Supreme Court did not reach a result contrary to a Supreme Court case with materially indistinguishable facts. Nor did the Georgia Supreme Court apply a rule that contradicts the governing law as set forth in Supreme Court precedent. To the contrary, the Georgia Supreme Court properly applied <u>Ashe</u> in its analysis of Petitioner's claim. Moreover, as the state habeas court discussed, Petitioner does not have a valid collateral estoppel claim because (1) the Murder Case concerned Petitioner's possession of a firearm on March 4, 2000, the date of the murder, and the Drug Case concerned his alleged possession of a firearm the next day, March 5, 2000, and (2) Petitioner's possession of the gun on March 5, 2000 was admissible to show the circumstances surrounding his arrest.

### B. Petitioner Procedurally Defaulted the Claim in Ground I(b) That the Trial Court Erred by Admitting His Conviction for Possession of Cocaine That Was Later Overturned.

#### 1. Petitioner's Claim Is Procedurally Defaulted.

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional

claim in federal court unless he first properly raised the issue in the state courts." <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)).   The exhaustion requirement applies with equal force to all constitutional claims.  <u>See</u> <u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1353-54 (11th Cir. 2012); <u>Footman v. Singletary</u>, 978 F.2d 1207, 1211 (11th Cir. 1992).   Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  <u>McNair v. Campbell</u>, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court.   First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds.   "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment."   <u>Boyd v. Comm'r, Alabama Dep't of Corr.</u>, 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.   Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law.  Finally, the state procedural rule must be

adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999). To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile." See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of

any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal.  See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows:  a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default[.]").  In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition.  O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

In subsection (b) of Ground I, Petitioner argues that the trial court erred by admitting as similar transaction evidence his conviction for possession of cocaine from the Drug Case because the Georgia Court of Appeals overturned this conviction for ineffective assistance of counsel because of false testimony from a state witness.  (Doc. no. 1, p. 6.)  Respondent argues the claim in subsection (b) of Ground I was not raised in the state habeas proceeding and thus is procedurally defaulted under O.C.G.A. § 9-14-51.  (Doc. no. 4-1, p. 9.)  Georgia law prohibits the assertion of claims in any successive petition that could have reasonably been asserted in the original state habeas petition.  O.C.G.A. § 9-14-51.  A review of the state habeas petition shows that Petitioner failed to raise this claim even though it was available at

the time of Petitioner's direct appeal and state habeas petition.  (See generally doc. no. 10-1.)

Because any attempt to bring this claim would be treated as defaulted by a Georgia state

court under O.C.G.A. § 9-14-51, Ground I(b) is now barred by state law and provides no

basis for federal habeas relief.  See Snowden, 135 F.3d at 736.

> **2.  Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claim in Ground I(b), and the Miscarriage of Justice Exception Does Not Apply.**

"A petitioner may obtain federal review of a procedurally defaulted claim if he can

show both cause for the default and actual prejudice resulting from the default."  Jones, 436

F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)).  "Cause for a procedural

default exists where something *external* to the petitioner, something that cannot fairly be

attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."

Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (internal quotation marks omitted).  "Once

cause is proved, a petitioner also must prove prejudice.  He must show 'not merely that the

errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"

Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady,

456 U.S. 152, 170 (1982)).

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without

a showing of cause and prejudice to correct a fundamental miscarriage of justice."  Jones, 436

F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The narrow fundamental

miscarriage of justice exception encompasses the extraordinary instance in which a

constitutional violation probably has resulted in the conviction of one actually innocent of

the crime.  <u>Murray</u>, 477 U.S. at 496.  In <u>McQuiggin v. Perkins</u>, the Supreme Court held that

this exception survived AEDPA's passage but "applies to a severely confined category:

cases in which new evidence shows it is more likely than not that no reasonable juror would

have convicted [the petitioner]."  133 S.Ct. 1924, 1933 (internal quotations omitted) (quoting

<u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)).

Petitioner has presented no justification for failing to raise this claim in his state

habeas proceedings, let alone something external to him that cannot be fairly attributed to

him.  Petitioner has also failed to demonstrate prejudice because he cannot show that the trial

court's decision to admit as similar transaction evidence his conviction for possession of

cocaine from the Drug Case infected his entire trial with error of constitutional dimensions.

This is particularly true where, as here, the state offered substantial evidence of Petitioner's

guilt on the murder and firearm possession charges in the Murder Case.  Additionally,

Petitioner has not put forth any extraordinary evidence of actual innocence sufficient to

trigger the fundamental miscarriage of justice exception.  Thus, Ground I(b) of Petitioner's §

2254 petition is procedurally defaulted.

  **C.** **As to Petitioner's Claim in Ground II That the Trial Court Erred in Admitting Evidence of a Jailhouse Fight, Petitioner Procedurally Defaulted Any Federal Aspect of this Claim, and Has Not Shown That Admission Rendered the Trial Fundamentally Unfair.**

In Ground II, Petitioner alleges that the trial court erred by admitting evidence of

Petitioner's involvement in a jailhouse fight, which improperly placed Petitioner's character

in evidence and denied him a fair trial.  (Doc. no. 1, p. 6-7.)  The Georgia Supreme Court, in

determining that the trial court properly admitted the evidence as a similar transaction, described the disputed testimony as follows:

> Terrance Barr testified that he, [Petitioner], and Joseph Parks were all inmates housed on the same floor of the Richmond County Jail on April 3, 2001, when [Petitioner] and Parks attacked him after he interrupted their attempt to steal something from his cell. After the beating, Barr discovered that a blanket had been taken. As a result of the attack, Barr suffered a collapsed lung, broken ribs, internal bleeding, and a chipped tooth.

Johnson, 733 S.E.2d at 739. Applying the three-fold test set forth in Williams v. State, 409 S.E.2d 649, 651 (Ga. 1991), the Georgia Supreme Court found that the trial court properly admitted the evidence of Petitioner's attack on another prisoner. Though Petitioner raised this evidentiary issue on direct appeal, the argument was based solely on state law grounds.

Because Petitioner failed to raise this ground as a federal claim at trial or on direct appeal, to the extent Petitioner may be attempting to assert a federal claim now, that claim is unexhausted. The Eleventh Circuit has held on multiple occasions that a petitioner does not properly exhaust when he fails to cite federal law or articulate the federal constitutional issues. Zeigler v. Crosby, 345 F.3d 1300, 1307-08 & n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the [state] courts the federal claim asserted to us."); see also Hartge v. McDonough, 210 F. App'x 940, 943 (11th Cir. 2006) (holding petitioner did not fairly present federal claim to state courts where he made single reference to "fair trial" and cited one federal case, which merely discusses evidentiary rulings under the Federal Rules of Evidence).

Here, Petitioner failed to raise at trial or on direct appeal any federal constitutional claim he may be attempting to raise in his petition concerning admission of his involvement

in a jailhouse fight. On direct appeal, Petitioner asserted that admission of this evidence violated Williams, 409 S.E.2d 649, and Georgia Uniform Superior Court Rule 31.1. (Doc. no. 5-42, pp. 26-27.) For this reason, the Georgia Supreme Court only addressed the claim on state law grounds. Johnson, 733 S.E.2d at 739-40. Because Petitioner failed to raise any federal aspect of this claim at trial or on appeal, a Georgia habeas court would find it barred under O.C.G.A. § 9-14-48(d). Snowden, 135 F.3d at 737. Therefore, Petitioner's failure to properly bring this federal claim in state court has matured into a procedural default. Jones, 436 F.3d at 1304. Nor has Petitioner demonstrated the cause and prejudice necessary to overcome the procedural default of this claim, or put forth any evidence sufficient to trigger the fundamental miscarriage of justice exception.

To the extent Petitioner claims that admission of this evidence violated state law, Petitioner has failed to demonstrate that the trial court's evidentiary ruling was erroneous or rendered his trial fundamentally unfair. Generally, federal courts in habeas corpus actions "are not empowered to correct erroneous evidence rulings of state trial courts." Boykins v. Wainright. 737 F.2d 1539, 1543 (11th Cir. 1984). To obtain habeas relief based on a state court's evidentiary ruling, a petitioner must show that the ruling rendered the proceeding "fundamentally unfair." Id. at 1544. "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" Snowden, 135 F.3d at 737. Petitioner cannot show error in the first instance, much less that the evidence of his jailhouse fight was a critical factor in the Murder Case.

In Williams, the Georgia Supreme Court held that evidence of similar transactions may be admitted if the state shows that (1) "the [s]tate seeks to introduce evidence of the

independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility," (2) "there is sufficient evidence to establish that the accused committed the independent offense or act'" and (3) "there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." 409 S.E.2d at 651. "Permitting evidence of a similar prior incident involving the defendant in order to show the defendant's course of conduct or bent of mind is a legitimate and proper purpose, and is not an infrequent occurrence at trial." Holloman v. State, 729 S.E.2d 344, 348 (Ga. 2012).

Here, the Supreme Court of Georgia properly found that admission of the evidence of the jailhouse fight was consistent with Williams and Holloman. First, the state introduced the evidence for the purpose of showing Petitioner's bent of mind and course of conduct. Second, the state presented sufficient evidence Petitioner committed the act, in the form of specific testimony by the victim, Terrance Barr. Third, the evidence was similar enough to the crime charged because both showed Petitioner committing violent acts with an accomplice against a person from whom he was stealing. Johnson, 733 S.E.2d at 739-40.

The Court thus agrees with the Georgia Supreme Court that the trial court's admission of the evidence was correct and in accord with Georgia law. Petitioner has also failed to establish that the Supreme Court of Georgia's decision on this issue was "based on an unreasonable determination of the facts in light of the evidence presented" at the state proceeding. 28 U.S.C. § 2254(d)(2). Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state habeas court's factual

determinations. 28 U.S.C. § 2254(e)(1). Nor did admission of the evidence render his trial fundamentally unfair, as it met all requirements for admission under <u>Williams</u> and <u>Holloman</u>. In addition, even if the trial court had committed error in allowing the testimony regarding the jailhouse fight, this evidence was clearly not crucial, critical, or a highly significant factor in Petitioner's conviction, particularly when compared with the evidence of his guilt as to the murder and firearm possession charge. In sum, Petitioner is not entitled to relief on Ground II of his petition.

> **D.     Petitioner Has Not Shown That the Trial Court's Instruction on Possession of the Weapon Rendered the Trial Fundamentally Unfair.**

In Ground III, Petitioner alleges that the trial court erred in charging the jury on presumption of possession of a firearm. The trial court charged the jury as follows:

> If you find that a person possesses a vehicle, you will be permitted, but not required, to infer that such person is in possession of the entire vehicle and all the property located on or in the vehicle. However, this is a rebuttable inference and may be overcome by evidence in the case that others had access to the vehicle. Whether or not this inference is drawn from proof that a person is the possessor of a vehicle, and whether or not the inference has been overcome by proof that others had access to the vehicle, are questions for the jury alone.

<u>Johnson</u>, 733 S.E.2d at 740. The Georgia Supreme Court considered this claim in Petitioner's direct appeal and found that the trial court did not err in giving the possession charge because it "properly reflected Georgia law as adjusted to the evidence of [Petitioner's] possession of the vehicle in which the murder weapon was found." <u>Id.</u>

"In general, questions of state law rarely raise issues of federal constitutional significance and, therefore, '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is

involved.'" Applewhite v. Sec'y Dep't of Corr., 373 F. App'x 969, 971–72 (11th Cir. 2010) (quoting Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)); see also Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (stating that the writ of habeas corpus was not enacted to enforce state-created rights).  "Where the claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available." Applewhite, 373 F. App'x at 972 (citing Estelle v. McGuire, 502 U.S. 62, 71–72 (1991)).

A federal habeas court's limited role when faced with a challenge to a state law jury instruction is to determine whether any error or omission in the charge was so prejudicial as to amount to a violation of due process.  Agan v. Vaughn, 119 F.3d 1538, 1545 (11th Cir. 1997).  A petitioner's right to due process is not violated unless an erroneous instruction was so misleading as to render the entire trial fundamentally unfair.  Id. at 1545 (citing Estelle, 502 U.S. at 72); see also Applewhite, 373 F. App'x at 972.  Furthermore, the Court is obliged to consider the state court's entire instruction, not simply isolated parts.  Cupp v. Naughten, 414 U.S. 141, 146–47 (1973).

The Due Process Clause "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime."  Francis v. Franklin, 471 U.S. 307, 313 (1985); see In re Winship, 397 U.S. 358, 364 (1970) (holding that due process requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged).  "[A] conclusive presumption on [an] issue . . . is the functional equivalent of a directed verdict on that issue."  Connecticut v. Johnson, 460 U.S. 73, 84 (1983); see also Smelcher v. Att'y Gen. of Ala., 947 F.2d 1472, 1476 (11th Cir.1991) ("It is beyond dispute that a judge

may not direct a verdict of guilty in a criminal jury trial."). In contrast to a mandatory presumption, which "instructs the jury that it must infer the presumed fact if the State proves certain predicate facts," a permissive inference "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." Francis, 471 U.S. at 314. A permissive inference does not violate the Due Process Clause as long as the suggested conclusion "is . . . one that reason and common sense justify in light of the proven facts before the jury." Id. at 314-15. This is true because "the State still has the burden of persuading the jury that the suggested conclusion should be inferred based on the predicate facts proved." Estelle, 502 U.S. at 78-79.

To determine whether an impermissible evidentiary presumption arose following a particular instruction, courts first must consider the specific language challenged. Francis, 471 U.S. at 315. If there is "a reasonable likelihood" that the jury understood "a specific portion of the jury charge, considered in isolation . . . as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole" in order to determine if other instructions "explain the particular infirm language." Boyde v. California, 494 U.S. 370, 378-80 (1990); Francis, 471 U.S. at 315.

Petitioner's claim involves a state court's interpretation of state law. Thus, the Supreme Court of Georgia's decision on Petitioner's claim is binding on this Court. See Carrizales, 699 F.2d at 1055 (Florida Supreme Court's determination that the trial court correctly refused to give a requested jury instruction under Florida law is binding on the federal habeas court); see also Lemon v. Allen, No. 1:11-CV-0933-JEC, 2014 WL 1292839,

at *15 (N.D. Ga. Mar. 28, 2014) (Georgia Court of Appeals' determination that trial court did not err in failing to charge jury on self-defense is binding on federal habeas court).

Additionally, the instruction does not violate the Due Process Clause because it did not create a mandatory presumption on the charge of possession. Instead, the trial judge's instructions made it clear that the presumption was merely a part of the state's case, that it gave rise to a permissive inference available only in certain circumstances rather than a mandatory conclusion of possession, and that the jury could ignore the permissive inference even if Petitioner offered no proof in rebuttal. See, e.g., County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 145, 157-65 (1979) (upholding as permissive inference instruction that jurors "were entitled to infer possession from the defendants' presence in the car" because it made clear "that the presumption was merely a part of the prosecution's case," and that state retained burden of proving possession beyond a reasonable doubt "without regard to how much evidence the defendants introduced.") Additionally, under the facts of the case, it was rational for the jury to infer Petitioner's possession of the gun because Petitioner was found alone in the vehicle with the weapon. Petitioner does not dispute this fact.

Accordingly, Petitioner has failed to establish that the jury instruction was erroneous, violated the Due Process Clause, or that the Supreme Court of Georgia's decision that the trial court did not err in giving this charge was contrary to, or involved an unreasonable application of, clearly established federal law.

### E. This Court Defers to the State Court's Correct Decision Denying Petitioner's Ineffective Appellate Counsel Claim in Ground IV.

#### 1. Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.

Ineffective assistance of appellate counsel claims are subject to the same two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). Petitioner must show that counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving appellate counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [trial] counsel acted . . . ." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise a frivolous argument on appeal. <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992). Nor does the Sixth Amendment require appellate advocates

to raise every non-frivolous issue.  Philmore, 575 F.3d at 1264.  Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985); see Brooks v. Comm'r, Alabama Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013) cert. denied sub nom. Brooks v. Thomas, 134 S. Ct. 1541 (2014).  Under the prejudice prong of Strickland, the petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694) (internal citation omitted).  As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts]

applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Bell v.</u> <u>Cone</u>, 535 U.S. 685, 699 (2002); <u>see also</u> <u>Cave v. Sec'y for the Dep't of Corr.</u>, 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly." <u>Bell</u>, 535 U.S. at 699. Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem review is doubly so." <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). Put another way, "[t]he <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial." <u>Richter</u>, 562 U.S. at 105.

> **2.  The State Court's Application of <u>Strickland</u> to Ground IV Was Correct and Certainly Not Objectively Unreasonable.**

Petitioner argues in Ground IV of his § 2254 petition that his appellate counsel was ineffective because she failed to argue that trial counsel was ineffective for failing to produce the record necessary to support Petitioner's collateral estoppel claim. (Doc. no. 1, p. 10.) Petitioner asserts that his acquittal in the Drug Case of the charge of possessing a firearm on March 5, 2000, the day after the murder, should have precluded admission of evidence in the Murder Case that he possessed a firearm at the time of the murder on March 4, 2000. (<u>Id.</u>)

At the state habeas court's evidentiary hearing, Petitioner's experienced appellate counsel, Ms. Claridge, testified that she had handled twenty to twenty-five criminal trials, twenty to twenty-five criminal appeals, and had been a member of a Georgia Bar for approximately seven years. (Doc. no. 5-6, pp. 9-10.) With regard to Petitioner, Ms. Claridge explained that she reviewed the entire trial transcript and motions in detail, researched any potential issues, and did not see an issue of trial counsel ineffectiveness, and concluded that trial counsel was effective in doing his job. (Id. at 11-12.) Specifically, Ms. Claridge stated that she did not think Petitioner's trial counsel was ineffective for not producing the transcript of the Drug Case in the Murder Case because the trial court in the Murder Case refused to admit the entire testimony of the officer that arrested Petitioner on March 5th, the day after the murder. (Id. at 12-13.) However, Ms. Claridge admitted that, in hindsight, she now saw this as an issue because the Supreme Court of Georgia rejected this argument and found that trial counsel did not try to introduce portions of the Drug Case necessary for the trial court to resolve the collateral estoppel issue. (Id..) Simply put, Petitioner's appellate counsel testified that, based upon her thorough research and review of Petitioner's trial, she believed at the time of appeal that she brought the most feasible claims on appeal and trial counsel had been effective with respect to the collateral estoppel issue. (Id.)

The state habeas court agreed that Ms. Claridge brought the most feasible claims and concluded that, as to the collateral estoppel issue, Petitioner did not satisfy the prejudice prong of Strickland because Petitioner had presented no evidence in the state habeas proceeding to support his collateral estoppel claim. Furthermore, the state habeas court found there was no collateral estoppel issue because (1) the Murder Case and Drug Case

dealt with possession of a firearm on different days, and (2) Petitioner's possession of the gun on March 5th, the day after the murder, was admissible to show the circumstances surrounding his arrest. (Doc. no. 5-2, pp. 7-8.) All of these conclusions are correct and entitled to the substantial deference required by AEDPA.

First, Petitioner did not present to the state habeas court the evidence he alleged supported his collateral estoppel claim that trial counsel and appellate counsel purportedly failed to present. (See doc. no. 5-2, p. 8.) As discussed *supra*, § III.A, the "burden [is] on the [petitioner] to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided." Dowling, 439 U.S. at 350. To ascertain whether an issue was actually determined when the jury entered a general verdict, "a court [must] examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe, 397 U.S. 436 (internal quotation marks and citations omitted). The state habeas court's determination that he had not presented the alleged evidence is entitled to substantial deference. See Reese, 675 F.3d at 1287. Moreover, even if this Court's review was not limited to the record that was before the state habeas court when they decided the collateral estoppel issue on the merits, Cullen, 131 S. Ct. at 1398, Petitioner has still not presented any evidence he alleges support his collateral estoppel claim.

Second, the Drug Case and the Murder Case dealt with Petitioner's possession of a firearm on different days. The jury's acquittal in the Drug Case was based on whether Petitioner possessed a firearm on March 5, 2000. The issue in the Murder Case was whether Petitioner possessed a firearm on March 4, 2000. Thus, collateral estoppel does not apply here because the

jury acquittal in the Drug Case was not about an element essential to conviction in the Murder Case. <u>See</u> <u>Digsby v. McNeil</u>, 627 F.3d 823, 831 (11th Cir. 2010) (applying <u>Ashe</u>) ("Only if the jury's acquittal in the first trial was based upon reasonable doubt about an element essential to conviction in the second trial does collateral estoppel apply."); <u>Dowling</u>, 439 U.S. at 350.

Lastly, the evidence was still admissible under <u>Dowling</u> because of the lower standard of proof to admit evidence under Rule 404(b). "[T]he circumstances surrounding an arrest made close in time to the offense that bear a logical relation thereto may be admissible as part of the res gestae." <u>Cartledge v. State</u>, 645 S.E.2d 633, 636 (Ga. Ct. App. 2007). As the state habeas court correctly found, the circumstances of Petitioner's March 5, 2000 arrest were admissible in the Murder Case because (1) it was the night after the showing occurred; (2) Petitioner held himself out to be a drug dealer on the night of the murder; (3) Petitioner was found on March 5, 2000, with drugs packaged for distribution; and (4) Petitioner fled from police on March 5, 2000, which can also be used to show circumstantial evidence of guilty. (Doc. no. 5-2, p. 8 (citing <u>Evans v. State</u>, 707 S.E.2d 353 (Ga. 2011).) Accordingly, because the evidence of Petitioner's possession of the firearm on March 5, 2000 was admissible, the state habeas court correctly found that Petitioner had failed to show prejudice under <u>Strickland</u>. <u>See</u> <u>Dowling</u>, 493 U.S. at 348-49 (upholding introduction of testimony of armed robbery victim at bank robbery trial as proper to prove identity under Rule 404(b), despite the fact that defendant had previously been acquitted of the armed robbery charges); <u>Thomas v. Jones</u>, 891 F.2d 1500, 1504–05 (11th Cir. 1989) (counsel was not ineffective for failing to object to evidence that was admissible as part of res gestae); <u>Romo v. Cowley</u>, 89 F.3d 851 (10th Cir. 1996) (holding introduction of evidence at

later trial for robbery as res gestae of robbery after same evidence was quashed at prior trial for assault was proper under <u>Dowling</u>).

For these reasons, in addressing Petitioner's claim in Ground IV, the state habeas court did not apply <u>Strickland</u> in an unreasonable manner. To the contrary, the state habeas court correctly applied <u>Strickland</u> in its analysis of Petitioner's claim.

**F.  Petitioner's Claim in Ground V Regarding the Purported Defect in His State Habeas Proceedings Does Not State a Cognizable Basis for Federal Habeas Relief.**

Ground V alleges that the state habeas corpus judge denied Petitioner his due process rights by denying the petition before expiration of the sixty days Petitioner had to submit a post-hearing brief. However, "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." <u>Quince v. Crosby</u>, 360 F.3d 1259, 1262 (11th Cir. 2004); <u>see also</u> <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1987) (holding that claim premised on alleged errors by state habeas court "[went] to issues unrelated to the cause of petitioner's detention," and thus "[did] not state a basis for habeas relief"). Because the claim in Ground V does not allege a defect in Petitioner's conviction or sentence, it is not cognizable in the instant § 2254 motion, and Petitioner is not entitled to relief on that claim. Furthermore, the state habeas court rectified any potential violation of Petitioner's due process rights because, as discussed *supra*, § I, the state habeas court vacated the premature order and re-entered an order denying relief after the time had expired.

**IV.  CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the

petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 19th day of June, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA